[763 NYS2d 563]

Jeffrey M. Siger, Respondent, v Angela S. Rich, Appellant.

First Department, August 7, 2003

236

## APPEARANCES OF COUNSEL

*Dennis C. Krieger* of counsel (*Esanu Katsky Korins & Siger, LLP,* attorneys), for respondent.

*William C. Herman* of counsel (*Peter Sullivan* on the brief; *Herman, Sloan, Robarge & Sullivan, LLP*, attorneys), for appellant.

## OPINION OF THE COURT

FRIEDMAN, J.

Plaintiff Jeffrey M. Siger (the husband) and defendant Angela S. Rich (the wife), both mature and independently wealthy individuals, entered into a prenuptial agreement negotiated by their respective counsel in May of 1999, and were married the following June. On August 9, 2001, the husband served the wife with a notice of intent to effect a permanent separation, which service constituted a "Separation Event" under the prenuptial agreement. Thereafter, on November 13, 2001, the husband commenced this divorce action.

This appeal concerns the disposition of the parties' marital residence, which is a triplex cooperative apartment comprising the first three floors of a townhouse annexed to One Beekman Place in Manhattan. The prenuptial agreement provides for two successive 90-day option periods for the purchase by one party of the other's interest in the marital residence, at a price equal to the seller's proportionate share of the appraised fair market value. Under the terms of the prenuptial agreement, the party who has made the larger financial contribution to the acquisition and improvement of the marital residence (the majority contributor) enjoys the first option (the majority option), which arises upon the occurrence of a Separation Event. The other party (the minority contributor) enjoys the second option (the minority option), which arises in the event the majority option expires without having been exercised. In the event neither option is exercised, the prenuptial agreement provides that the marital residence "shall be sold and the net proceeds of the sale shall be divided between the parties in proportion to their respective contributions."

The question presented is whether effect should be given to the husband's exercise of the minority option during the second 90 days after the Separation Event. The wife opposes giving effect to the husband's exercise of this option even though she concedes that she held the majority option but failed to exercise it during the first 90-day period. On appeal, the wife contends in support of her position, inter alia, that, until after the expiration of the majority option period, the parties were in agreement that neither option would be exercised, and that they would instead sell the marital residence to a third party. According to the wife, this agreement (the existence of which is denied by the husband) induced her to forego exercising the majority option while it was in effect. We now hold that fact-finding proceedings must be held to determine whether the husband in fact agreed with the wife to sell the marital residence to a third party so as to equitably estop him to exercise the minority option once the majority option expired.

The parties' purchase of the marital residence closed on May 30, 2000. The following month, on June 27, 2000, the parties closed on the purchase of a separate but adjacent apartment on the fourth floor of the same townhouse. Although the fourth-floor residence was purchased in the names of both parties, the parties have since transferred ownership of that unit to the wife alone, and it is now undisputed that the fourth-floor residence is the wife's separate property. The parties make various conflicting allegations about each other's conduct relating to the purchase of the two apartments and the renovation of the marital residence, which need not be detailed here.

For present purposes, what is relevant is that, on August 9, 2001, the husband served the wife with written notice of his desire to effect a permanent separation, which service constituted a Separation Event under the terms of the prenuptial agreement. Again, pursuant to the prenuptial agreement, the majority option to purchase the other party's interest in the martial residence was in effect for 90 days after the service of the notice of August 9, 2001, that is, until November 7, 2001. It is undisputed that neither party made any attempt to exercise the majority option prior to its expiration.

During the majority option period, each party claimed to be the majority contributor, or at least declined to concede the other's majority status. The earliest correspondence in the record subsequent to the service of the notice of August 9, 2001 is an August 22, 2001 letter to the husband's counsel from the wife's counsel, which states that the wife "has surely contrib-

uted more than half" to the costs of "the downstairs apartment at One Beekman Place," i.e., the marital residence. The husband's counsel responded by letter of the same date, which asserted, inter alia, that the wife was "in error in claiming she has contributed more than half to the [marital residence]." Subsequent correspondence from both sides reflects that there was an agreement to exchange documentation of the parties' respective monetary contributions to the purchase and improvement of the marital residence. It is uncontroverted, however, that the wife never retreated from the claim that she is the majority contributor, as stated in her counsel's letter of August 22, 2001.

The correspondence from the period during which the majority option was in effect (again, from August 9 to November 7 of 2001) also reflects that, within that time frame, the parties were discussing the possibility of selling the marital residence to a third party, dividing the proceeds in proportion to their respective contributions, and foregoing the exercise of either buy-out option. However, the record does not establish whether or not the parties actually reached an agreement to sell the marital residence prior to the expiration of the majority contributor's option period. An affidavit by the husband states that, because the value of the marital residence and the fourth-floor residence as one unit was greater than the sum of their respective separate values, the husband was interested in selling the two apartments together, but not in selling the marital residence by itself. That the husband was interested only in a joint sale is borne out by his counsel's correspondence included in the record.[1] By contrast, an affidavit the wife submitted to the IAS court appears to reject the possibility of effecting such a joint sale.[2]

---

**1.** For example, although the husband's counsel's August 22, 2001 letter to the wife's counsel refers to a contemplated sale of the marital residence, it also states that it was the husband's understanding that the wife had recently met "with a real estate agent to discuss the best method of *selling both apartments together as a unit to get the best price*" (emphasis added). Similarly, the husband's counsel stated in a September 4, 2001 letter to the wife's counsel that it was the writer's understanding that "the parties have decided *to sell the upstairs apartment and the downstairs as a unit*" (emphasis added).

**2.** In this affidavit, the wife states that she "refused to package the Upstairs Residence, *my separate property*, along with the Marital Residence, on [the husband's] one-sided terms," when the husband informed her after the expiration of the majority option period that he was then contemplating exercising the minority option unless she would agree to a joint sale.

On or about November 15, 2001, after the majority option had expired on November 7, 2001, the husband served the wife with an order to show cause seeking an appraisal of the marital residence preparatory either to a sale of the wife's interest therein to the husband, or to a sale to a third party, at the husband's option. The wife claims that the service of these papers, after expiration of the majority option period, was the first time the husband had ever suggested to her that he was the minority contributor, or that he was contemplating the exercise of the minority option to purchase her interest.

On January 24, 2002, the husband served the wife with a notice of exercise of the minority option. Notably, the wife had not made any effort since November 15, 2001 to obtain affirmative judicial relief either against a purported exercise of such option by the husband, or to extend her time to exercise the majority option. After the service of the January 24 notice, however, the wife did serve the husband with a notice, dated February 13, 2002, purporting to exercise an option (not characterized as either the majority option or the minority option) to purchase the husband's interest in the marital residence.[3]

By notice dated February 22, 2002, the husband moved for an order determining the effectiveness of the parties' respective notices of the exercise of an option. Taking the position that he was the minority contributor, the husband argued that the prenuptial agreement required that his notice be given effect because the wife, the now-undisputed majority contributor, had not attempted to exercise the majority option during the first 90 days after the Separation Event, while the husband, the now-undisputed minority contributor, had served his notice during the second 90 days.

In response to the husband's motion, the wife cross-moved for, inter alia, a hearing to determine each party's majority or minority status and each party's proportionate interest in the marital residence. The wife also sought to have the party determined to be the majority contributor at the hearing given another 90 days from the date of such determination to exercise his or her option. The wife argued that the prenuptial

---

**3.** The wife apparently dated her notice February 13, 2002, because that date was 90 days after November 15, 2001, the date she learned that the husband was contemplating the exercise of the minority option. Under the terms of the prenuptial agreement, neither option was in effect on February 13, 2002, the minority option having expired on February 5, 2002 (180 days after the Separation Event of August 9, 2001).

agreement's definition of each party's "Contribution" to the costs of the marital residence determining that party's majority or minority status was so "convoluted, vague and ambiguous" that the parties should be excused from having to operate under the agreement without judicial guidance. She further argued that she had somehow been prevented from exercising the majority option within the time frame provided by the prenuptial agreement because the husband had formerly challenged her claim to be the majority contributor.

The IAS court declared the husband's exercise of the minority option to be effective. In so ruling, the court observed that there was no need for a hearing as to which party was majority contributor, since the husband now conceded the correctness of the wife's consistently held position that she was the majority contributor. The court rejected the wife's position that the prenuptial agreement could not be enforced as written, as well as the wife's position that the husband had prevented her from exercising the majority option prior to its expiration. "Nothing prevented [the wife] from exercising her option to preserve her position should the husband have chosen to contest her claim that she was the majority contributor," said the court. "[T]he exercise of her option by simply sending a letter to preserve her right would not have been a futile gesture * * *. If the husband contested her [right to exercise the] option, the Court would have then been called in to enforce the agreement."

On appeal, the wife repeats the contentions she previously made, and argues in addition that the contemporaneous correspondence evidences that the parties had an agreement throughout the majority option period to sell the marital residence to a third party. In reliance on this agreement, the wife now claims, she refrained from exercising the majority option until it expired in November 2001. While we reject the wife's other arguments, and disagree with her view that the correspondence by itself establishes as a matter of law that an agreement to sell to a third party in fact existed, we find the wife's position to have merit to the extent that factfinding proceedings should be conducted to determine whether she refrained from exercising the majority option in justifiable reliance on an agreement with the husband.

At the outset, we reject the wife's theory that we may extend her time to exercise the majority option, in disregard of the express terms of the prenuptial agreement, simply because the husband waited until after the expiration of the majority option period to concede her majority status. The record reflects

that the wife, relying on her own legal and financial advisers, and on her own direct knowledge of the relevant transactions, has never budged from her claim to be majority contributor, regardless of the husband's agreement or disagreement. In the face of the husband's refusal to acknowledge that she was majority contributor, the wife could easily have protected her position by serving a notice of exercise of the majority option within the first 90 days after the Separation Event. As the IAS court correctly observed, had the wife served such a notice, any disagreement as to its effectiveness that could not be resolved amicably would have been submitted to dispute resolution proceedings, either in court or, if the parties so agreed, under the arbitration option provided by the prenuptial agreement.

The case of *Kotcher v Edelblute* (250 NY 178 [1928]) is instructive. In *Kotcher*, a lease granted the lessee an option to purchase the leased premises during the first two years of the lease's term. When the landlord repudiated the lease as a whole, the lessee brought an action for specific performance of the lease. At the trial of the action, which was conducted after the option had expired under the terms of the lease, the lessee, who had never before given notice of exercise of the option, announced that he was exercising the option. Although the lessee prevailed on the issue of the validity of the lease, the Court of Appeals rejected the lessee's contention that his failure to exercise the option within the time provided by the lease was excused by reason of the landlord's repudiation of the lease. While the *Kotcher* decision acknowledged the principle that the grantor of an option who has prevented timely exercise thereof "may not avail himself of his own wrong, and the grantee of the option has a reasonable time to exercise it after the obstacle has been removed" (250 NY at 184 [citations omitted]), the Court of Appeals noted immediately thereafter that "[e]ven repudiation of the option by the grantor does not prevent the grantee from exercising his election" (*id.*). Therefore, applying the principle that time is of the essence in options to purchase real property (*id.*), the Court of Appeals held that the lessee's untimely exercise of the option was ineffective.

The husband's now-abandoned dispute of the wife's right to exercise the majority option is analogous to the landlord's repudiation of the lease in *Kotcher*. In neither case was the refusal of the grantor of the option to recognize the grantee's right to exercise the option an obstacle to the timely exercise of the option. The wife, like the lessee in *Kotcher*, could have given timely notice of her exercise of the option and, if neces-

sary, sought judicial assistance to enforce such exercise. Thus, the former disagreement as to the wife's majority status did not, by itself, "prevent" the wife from timely exercising the majority option in accordance with the terms of the prenuptial agreement.

Also without merit is the wife's contention that the husband's dispute of her majority status, by itself, equitably estops him to exercise the minority option. The wife never relinquished her claim to be the majority contributor in reliance on the husband's contrary position. Because the wife cannot claim to have detrimentally changed her position in justifiable reliance on the husband's denial that she was the majority contributor, no estoppel arises from his denial of her majority status (see *Nassau Trust Co. v Montrose Concrete Prods. Corp.*, 56 NY2d 175, 184 [1982]). Similarly, because the wife never believed or relied upon the husband's denial of her majority status, she cannot claim to have been defrauded, deceived or misled by his assertion of that position. Nor does the husband's withdrawn challenge to the wife's majority status amount to a "voluntary and intentional abandonment of a known right" (*id.*) that could be deemed to "waive" any rights he might have as minority contributor should his initial position prove to be incorrect.

Neither are we persuaded by the wife's contention that her failure to act in a timely fashion should be excused by reason of the uncertainty that allegedly arose from the supposed ambiguities in the prenuptial agreement, and from the wife's alleged confusion, in view of the ongoing renovation of the marital residence, as to whether she was the majority contributor as of the date of the Separation Event. There has never been any doubt that a Separation Event occurred on August 9, 2001, and that the majority option was in effect for 90 days thereafter. Whatever matters may have been subject to uncertainty or dispute, nothing prevented the wife, who has always believed herself to be the majority contributor, from preserving her rights by sending a notice within the agreed-upon time frame, and leaving any disputes to be resolved through subsequent judicial or arbitral proceedings.[4] Further, unless the parties reached an agreement that neither option

---

4. We further observe that, contrary to the wife's belated claim of uncertainty as to whether she was majority contributor as of the date of the Separation Event, the record reflects that her counsel claimed majority status on her behalf no later than August 22, 2001, less than two weeks after the Separation Event. Moreover, at oral argument below, the wife's counsel agreed with the IAS court that the wife "has always contended that [she is

would be exercised (as discussed below), under all the other circumstances of this case, we fail to perceive any inequity that would result from enforcing the prenuptial agreement according to its terms (*cf. J. N. A. Realty Corp. v Cross Bay Chelsea*, 42 NY2d 392 [1977]). In this regard, we note that the wife will not suffer any forfeiture if the husband's exercise of the minority option is given effect, since, in that event, she will receive her proportionate share of the appraised fair market value of the marital residence.

Although we find all of the wife's other arguments wanting for the reasons discussed above, we nonetheless conclude that the order of the IAS court should be modified in view of the possibility, as reflected in the parties' contemporaneous correspondence, that the parties were in agreement during the majority option period that the marital residence would be sold to a third party, and that neither option would be exercised. If the parties in fact reached such an agreement, and, as the wife now contends, she refrained from exercising the majority option in reliance on that agreement, the husband would be equitably estopped to exercise the minority option once the majority option period expired. In such situations, estoppel is invoked to prevent enforcement of a right that would work inequity against a person who has changed position to her detriment in justifiable reliance on the words or conduct of the party seeking to enforce the right (*see Nassau Trust*, 56 NY2d at 184). Since the factual issue of whether an agreement upon which an estoppel could be predicated cannot be resolved on the existing record, factfinding proceedings for that purpose should be held on remand.

In the event it is determined that the wife refrained from exercising the majority option in reliance on the husband's agreement to sell to a third party, the result will be that the agreed-upon third-party sale will go forward. On the other hand, in the event it is determined that no such agreement was made, there will be no basis on which to deny effect to the husband's exercise of the minority option, and he will be entitled to enforcement of that exercise. In either event, there is no need for the IAS court to determine which party is majority contributor, since it is now undisputed that, at all relevant times (including the date of the Separation Event), the wife has been the majority contributor. Finally, while it will ultimately be necessary to ascertain the parties' respective per-

---

the majority contributor]," and further admitted that "we believe we always were [the majority contributor]."

centage interests in the marital residence for purposes either of dividing the proceeds of a sale to a third party or, alternatively, determining the price the husband must pay for the wife's interest, that question is not now before us.

Accordingly, the orders of the Supreme Court, New York County (Laura Drager, J.), entered April 3, 2002 and May 16, 2002, which, in granting a motion by plaintiff and denying a cross motion by defendant, declared effective and enforceable plaintiff's January 24, 2002 notice purporting to exercise an option to purchase defendant's interest in the marital residence pursuant to the parties' prenuptial agreement, and further declared ineffective and unenforceable defendant's February 13, 2002 notice purporting to exercise an option to purchase plaintiff's interest in the marital residence pursuant to the same prenuptial agreement, should be modified, on the law, to vacate the declaration of the effectiveness of plaintiff's January 24, 2002 notice, and otherwise affirmed, without costs, and the matter should be remanded for further proceedings consistent with this opinion.

TOM, J.P., ANDRIAS, SULLIVAN and MARLOW, JJ., concur.

Orders, Supreme Court, New York County, entered April 3, 2002 and May 16, 2002, modified, on the law, to vacate the declaration of the effectiveness of plaintiff's January 24, 2002 notice, and otherwise affirmed, without costs, and the matter remanded for further proceedings.